I'm Stephen Yagwin. Good morning, Judge Clifton, Judge Farris, Judge Bea. I'm just going to take a minute or two. I'm going to share my time with Mr. Bieber, and then I'm going to reserve two minutes for reply. I represent only myself in this matter, and I just have three quick points to make, because everything was covered in the briefs. First, under the Remand, this case to the District Court so that it can procedurally do the case in the correct way, not on a motion to dismiss, but on a motion for summary adjudication or summary judgment. Second, as is pointed out in the opening brief, it's contended that the correct statute of limitations is under California Code of Civil Procedure 340, and it's four years under the Sharkey v. O'Neill case, which was decided after the briefing in this case and was submitted in a Rule 28J statement. Alternatively, the correct statute of limitations is three years under California Code of Civil Procedure 338A, because this is, in essence, an action created by statute. Unless there are any questions now, I'm going to sit down and give the rest of my time to Mr. Bieber. Rex Bieber on behalf of Prisoner Schwartz, Your Honors. I'm going to address just two issues in my argument. I'll start off with the exhaustion issue, because the argument there I think is straightforward and compelling on facts that are essentially undisputed. As this Court is aware, when the third complaint was filed, it was filed as a Bivens actions. The Board of Prison Defendants responded by making a motion under 12b-6 for dismissal. What the Court did at that time is it accepted evidence on that issue. It accepted the pleadings. It accepted the declarations of the plaintiffs, and it accepted declarations on behalf of the Board of Prisons. This is the most important fact for the purposes of the proceedings today. The Court made two findings, two critical findings that are a part of its memorandum order. First, the Court made the finding that the plaintiff's declaration, taken on its complaints, his Eighth Amendment complaint and his discrimination complaint, he had filed a grievance at each of the four levels that was required, and to the extent that he failed to meet a procedural requirement, namely the attachment of the results of the proceeding before, he was excused from that on the basis that he was not provided under his declaration with that information and could not do it. It was futile and impossible to do it. And the Court made it quite clear that if credited, that established a complete defense to exhaustion. What the Court did then procedurally is interesting. The Court then accepted the declaration from the Board of Prison, which the Court concluded, quote, was in direct contravention of the declaration of the plaintiff, Schwartz. At that point in time, what the Court did is it took the two declarations in a manner unknown to us because it's not disclosed by the Court, weighed the evidence, and essentially made a determination of who was telling the truth and who was correct as to the completion of the exhaustion requirement and dismissed the case. What we know from Albina, which was decided, by the way, just four months after the District Court did this, is that everything the Court did was unlawful under the standard promulgated by the Ombud decision of this Court. First of all, as correctly pointed out by Mr. Yagman, the Court couldn't entertain a motion to dismiss at all. It was without the power to do it because, as you know, in Albino, the Court established that the only way exhaustion becomes a factual issue is when it's raised in an affirmative answer. And as the Court knows, no answer was filed in this case before dismissal. That's problem number one. Now, problem number one is not so problematic because it is merely procedural. But problem number two is Albino makes it clear not only that the correct procedural device is a motion for summary judgment, but it makes it clear that it is the obligation of the District Court judge to deny the motion for summary judgment if there is a triable issue of fact. That's the standard under Albino. And we know the Court made a specific finding that there was a triable issue of fact. It found the declarations to be in complete contravention, and it specifically uttered in its memorandum order that Schwartz's declaration taken at face was enough to establish that, in fact, he had exhausted. So in direct violation of Albino, this Court … And indeed, the District Court acted in this case in large part because it was thought it was bound by some prior Ninth Circuit panel decisions. So the lesson for this may be to District judges, hey, you screwed up, you trusted us, and later we come out with an en banc decision that changes the law. So I take it your argument is that under the Albino standard, this dismissal is supportable. Instead, what it says is the District Court was allowed to do this because there is an exception under the law of the case doctrine that permits the prior Ninth Circuit ruling to dominate, notwithstanding the subsequent and invalidating Albino decision. And that argument misses the point for at least three reasons. First of all, the Ninth Circuit has never given law of the case force and precedent to a case that was decided under a different law than applies in the present circumstances. Under Wyatt v. Tarun, at the time that the Ninth Circuit made its decision to affirm the prior dismissal based on a failure to exhaust, it was deciding it under a rule that followed basically the now-defunct notion that you could weigh the evidence. That's simply not the law anymore. Furthermore, it was following a rule that allowed contextually and procedurally the motion to take place in the context of an unenumerated 12B6 motion, which can't be done anymore. So you would have to essentially hold that what turned out not to be the law has to be given precedential value in this Court for no other reason than the happenstance that before the en banc decision was made, the Ninth Circuit uttered an opinion on this issue. That alone would be sufficient to dispel the argument of the government, but there's still two other problems with the argument. This Court has never given, under issue preclusion standards or law of the case standards, precedential value when the so-called precedent was decided under a different set of facts. If you examine closely what the Ninth Circuit did when it made its pronouncements, it made its pronouncements based on the findings of Judge Morrow in the very first proceedings. It had to do that, by the way, because as you remember, in the second set of proceedings that led to a dismissal, the judge didn't have any finding of facts on exhaustions because she elected to grant dismissal on the failure to file a Bivens action. When the action that is before you was filed, that action was filed in a context where the evidentiary array was profoundly different, so profoundly different that the Court in its memorandum order cataloged and for example, with regards to one of the claims, he'd not gone beyond the first level. It was abundantly clear, with documentary support, that he had gone all the way up and so that the only remaining issue was the forgivability of his not attaching the prior response. So the evidentiary array was different and the procedural posture of the case, I submit, was different in at least one other and very important regard. And that difference was that the last complaint, the complaint that's before you, when that complaint was filed, the prisoner was no longer in the custody of the United States. He was in Canadian custody and try as it will, the United States cannot find a single case to support the argument that the PLRA has ever put a requirement on somebody in foreign custody. At whatever stage of exhaustion he was prior to being changed, it was futile for him to make a change thereafter. A, because Canadian authorities can't change the administration of an American prison and B, there's no evidence in the record that he even had the factual capacity to make a complaint. I submit, on the basis of yet one more argument, that it would be senseless to give presidential authority to that earlier Ninth Circuit reasoning. And it would be senseless because it would violate the very purpose of the law of the case doctrine. The doctrine exists to ensure that inferior courts or co-equal courts obey the authority of courts which are their superior or had jurisdiction to decide an issue. It's a doctrine really of administrative deference. It's not a doctrine of substantive law. What a bizarre notion it would be that somebody would come to this court and say, you should give precedential value and give respect to a decision that was made on the basis of an interpretation of a law that proved incorrect. And in so doing, essentially eviscerate the legal force of an en banc decision made subsequently by the same Ninth Circuit. What I'm suggesting is that both under the law, under the facts, and under the controlling policy that concerns both issue preclusion and the issue of law of the case, the government's argument is specious. This case has to be submitted on remand. The – I submit to you that the only real question you have on remand is whether or not the trial judge in this case, in light of the Ninth Circuit court's view that judges who have shown such ardor about their opinion, are sometimes best not participants in a remand. The real question you have before you is whether or not on remand this case should go to another judge. I can't imagine that. Well, well. I mean, that's what you're going to give us? What? She ruled in compliance with then-existing Ninth Circuit case law, and you're telling us she can't put out of her mind the fact the Ninth Circuit came out with a different law later? If that – if that was the problem, no, I wouldn't be making the argument. But she did something I suggest a little bit more reasonable. Let me try to direct you to something that might be more useful, which is why is it – or what is your due process claim at this point? Well, I will make the argument on the discrimination claim because it's a more straightforward way to do it, if I can. That's not the question I posed. Do you have a due process claim at this point? Are you abandoning that claim? No, not abandoning it. What is it? It's very simple. The due process claim is, while you may not have a substantive right to a grievance system, you have a substantive right once a grievance system exists and there exists a defense of failure to exhaust. You have a right to have decisions made in that system in a way that are sufficiently timely that you can get judicial review. Now, the argument of the government – But you're here. I know the argument of the government. The argument of the government is, but you can get – You're here. What? You've got judicial access. What's the issue? Ah, the issue is that's not what is required under the law of the Ninth Circuit. The Ninth Circuit doesn't say that futility is controlled by whether it's futile because you can't get a district court or a court review. What it requires is, quote, as a practical matter at hand, under the circumstances, whether or not an administrative remedy is available. And you see – and the Seventh Circuit has been clearer about this than the Ninth Circuit, but the Ninth Circuit clearly has cited approvingly that Seventh Circuit authority, which says that the issue is not whether you can get to a district court. The issue is whether or not the system is set up so that you can't get an administrative remedy. And I submit to you under the pleadings of this case, which we have to treat as true for the purposes of these proceedings, you couldn't, because here's what would happen to you. So your due process claim is the lack of an administrative remedy? I mean, my question was, what's your claim? I'm still lost as to what your claim is. What is it that's been deprived? He has been deprived of the ability to gain an administrative remedy by creating an administrative remedy system that is essentially a sham. And he has deprived reasonably quick access to court. What specifically? When the system does things as the record in this case establishes. It might help if you'd let me ask you a question. No, I apologize. What specifically do you want us to do? I want you to reverse the dismissal, to remand the case for proceedings consistent with Albina, which would require that, quote, reasonable discovery limited to the issue of exhaustion take place. And then there should be a bench trial, because there's no right of jury trial, as you know, with regards to this issue. There should be a bench trial on the issue of exhaustion. With regards to the discrimination claim, or what I'll call the equal protection claim, which is the stronger of the two, and I haven't argued that yet, the decision should be reversed. Clearly, if I was standing here and telling you that my client was black, that the prison system had a rule that black people per se not were standing here. The question is, what were you asking for? I'm not, and you're already 30 seconds over time, so I'm not looking to a whole new rhetorical flourish. Reversal. I'm through. Thank you. I hope you knew when you came, you were coming to such an interesting argument. Everything surprises me sometimes. Okay. May it please the Court, I am Assistant United States Attorney Richard Park, representing the individually named Federal Bureau of Prisons officials. Today's appeal primarily concerns the complaints of Mr. Schwartz from 2010 while he was in Bureau of Prisons custody, and let's be very clear about what those grievances were. First, he requested a minimum security camp designation to be able to serve out his sentence, and number two- Mr. Park, may I ask you this? I couldn't find any claim of statute of limitations as to Mr. Schwartz. Do you agree with that? That is not what we argued below, Your Honor. Correct. Thank you. So there are two claims. One about the camp designation, and second about the dysfunctional toilet. As this Court is well aware, this very Court- And there's the due process claim. There are due process claims which I think are adequately addressed as a matter of law, but with respect to this administrative exhaustion issue which Petitioner has brought up, it's very clear that this Court in 2012 examined those very same issues. Clearly searched the record, and conclusively determined that Mr. Schwartz failed to administratively exhaust his remedies. So what do we do about the subsequent en banc panel decision? The Albino decision. Allow me to address that, Judge Clifton. So post-Albino, trial courts are not supposed to use an unenumerated 12B motion to dismiss these claims of administrative exhaustion. Rather, the preference is for a Rule 56 motion, correct? Here, this District Court decided it in the pre-Albino context, but it shouldn't make a difference here, and here's why. The 2012 decision of this Court has already decided the issue of administrative exhaustion, and this Court can adopt that finding and find that Mr. Schwartz failed to- So why doesn't our en banc panel decision apply, which would be inconsistent with what our panel did in 2012? Well, as Your Honor noted- Usually law applies, doesn't it? I mean, and this isn't some unconstitutional retrospective application. We need to apply the law as it applies today, and ordinarily on appeal, you'd take into account decisions even if subsequent to the District Court's determination. You take into account precedent that's developed since then. Agreed. So why doesn't Albino apply? It does apply, and even in the post-Albino context, this Court has recognized several instances in which you don't need to undo what the District Court did to affirm its ruling. Let me give you two examples. The first example is a case called McBride, which was decided in 2010, and in that case- That doesn't tell us not to apply Albino, does it? Well, what it does is it searched the record and found that no further factual development was necessary to arrive at the conclusion that administrative exhaustion had not taken place. Another case is a case of Williams v. Perano, where they looked at the case, and even though the trial court had decided administrative exhaustion issues in a motion to dismiss, the court, this court, went ahead and converted that into a summary judgment-type proceeding because it realized that the court, the District Court, had considered extrinsic evidence from both parties, and in reviewing the record, that it had done essentially what a summary judgment motion would have done, which is to analyze disputed issues and find what was undisputed here. Albino may not have bolted the door wide open and said that summary judgment is impossible, but it certainly changed the landscape, didn't it? It sure did. After Albino, the proper procedural mechanism is a summary judgment motion, but I'll add that even the Albino decision- It's not purely a matter of procedure. I mean, the question is how do you approach it? You approach a motion to dismiss differently than you approach a summary judgment differently than you approach what amounts to a bench trial. In this case, it seems inescapable to me. There are conflicting versions as to whether or not the pursuit of the administrative procedure system was, the grievance system, was futile. And there's a pretty decent case being made by plaintiffs that they've been papered to death, but have faced a circumstance where it's impossible for them to get to pass go, to get this decision, this grievance that they're pushing forward properly considered. And as a result, they argue, they should be allowed to get to court. And the court recognizes that futility in pursuing administrative remedies is a basis to get to court. What Albino seems to say is you make that decision at the end of the process, not at the beginning. Well, here it was made at the beginning, and it may be that at the end of the process the same decision will be made, but I have trouble looking at this case and saying there are no genuine issues of fact. Well, Judge Clifton, I'll submit to you that the very same declaration that was used by this Court to determine that Mr. Schwartz had failed to administratively exhaust his remedies was the very same declaration that was used in this case. I used this Court prior to Albino. Now, can you say that our memorandum of disposition issued with regard to the same plaintiff is a memorandum of disposition that would be issued in exactly the same form had the Albino decision preceded it? I can't. If Albino applies, it seems to me that mem dispo doesn't stand in the form that it's issued. What Albino said at the very beginning of that decision is that the change that it affected may be one of more of nomenclature than of practical operation. In recognizing that, post-Albino decisions have recharacterized motions to dismiss as motions for summary judgment because extrinsic evidence was brought by both parties. Another case has recognized that no further factual development was necessary. So even if this Court were to send this case back to the district court, discovery would be futile because all the evidence regarding the administrative remedy requests have already been submitted to the Court, both in 2012 and again in 2014 for this case. So there's not going to be any purpose served by going back and allowing further factual development where there is none. I'm assuming your position is that we should affirm. But what should we say just before we say affirmed, in your view, if we do affirm? What would be the language? What would be the basis? This Court would have several options. It could say that this issue of administrative exhaustion with respect to Mr. Schwartz's two claims has already been decided by this Court in its 2012 memorandum disposition. It could also choose to convert the motion to dismiss into a rule 56 motion in light of the extrinsic evidence that was provided by both parties. It could state that no further factual development would be necessary or useful in this case and therefore affirmance is appropriate as well. All the records that you need are already in the record of this appeal as well as the previous appeal. Nothing has changed. I'll further add that albino, notwithstanding the change in the procedural device that's appropriate for administrative exhaustion, it did recognize that issues of administrative exhaustion should be decided before the merits of the case were decided. It did fall in line with the general precepts of the Prison Litigation Reform Act of 1995 in pushing for early decisions to promote judicial economy, to promote efficiency in the Bureau of Prisons and other prison systems. And so it's necessary and appropriate that in this case as well that the administrative exhaustion issues be taken up and decided at the very earliest possibility. And here it happened to be a motion to dismiss before the albino decision, but this Court has, as I mentioned, has several different options in affirming the district court's decision either based on its memorandum disposition from 2012 or it could decide to convert the motion to dismiss into a summary judgment motion. And summary judgment, do you mean summary judgment in some context gets used as something other than the usual Rule 56 summary judgment? Are you suggesting that's in circumstances where there are conflicting factual arguments, but where there's an administrative record? We get that frequently, for example, in cases regarding Social Security disability benefit appeals. It's called summary judgment, but in fact, district courts looking at the record and recognizing there are differing factual descriptions or narratives, but makes a judgment as to which one is more persuasive. Is that the kind of summary judgment you mean, or do you mean a summary judgment like the usual Rule 56 summary judgment where there are no genuine issues of fact? Because it's the latter. I have a harder time here. I mean, we have the district court made specific reference to reliance upon a BOP attorney's declaration. I've forgotten her name, and that doesn't dispute the core argument being made by plaintiffs, which is that, yeah, our paperwork was turned down so we didn't finish the process, but it was turned down because we couldn't submit the necessary attachments because we hadn't received the necessary attachments back. That strikes me as a genuine issue of fact. If that's the reason that the attempt to exhaust administrative procedure failed, that seems to support an argument of futility. Now, what I'm finally getting to, there's a question in there, honest. That sounds more like a bench trial resolution, not a summary judgment resolution. If it is a bench trial resolution, how can we make that? Well, the Williams-Ferrano case, it didn't militate for a bench trial. It decided this issue following a motion. To address your question about futility, because I hear it coming up a few times, the law in this area is very well developed, and the Bureau of Prisons has very clear regulations with respect to its obligations to respond to administrative grievances, as well as the inmates' obligations to fulfill procedural requirements and deadlines. The Ninth Circuit has made very clear in the Kimbrell v. Sapp case that to the extent that those, that procedure is not available, that it can still file suit in federal court. But that requisite threshold hasn't been met here. Mr. Schwartz has never argued that he didn't receive an orientation that administrative grievances could be filed. He never said that the complaints were not available. He never said that once he submitted a complaint, it wasn't sent on. Well, the declaration of Sarah Shue that the district court explicitly cites to basically appears to say the appeals were sent back because Petitioner failed, for example. Petitioner failed to provide a copy of the warden's response. He doesn't resubmit it. And meanwhile, plaintiff is saying I didn't resubmit it because I didn't get the response back that I needed to submit. Well, the declaration from the BOP attorney doesn't speak to that. And you can tell me that BOP has regulations required to be given back, but regulations sometimes get not complied with. So how do I know that, in fact, plaintiff received back all the paperwork that he needed to receive back in order to exhaust the administrative process? How can I adjudicate that? What you can do is look back at the regulations and 28 CFR. Well, how does the regulation answer the question? Because the regulation says that if the petitioner or the inmate doesn't receive a written response within a prescribed set of amount of time, then he or she is allowed to go ahead and go to the next level. He failed to do that. I also want to kind of bring this in the context of what the Supreme Court said in Woodford versus Go in 2006. It made very clear that exhaustion of administrative remedies requires proper exhaustion. That means following the procedural rules. That means following the deadlines. And to the extent that inmates are permitted to claim that they didn't get a response and then file in federal district court, that would render the PLRA essentially toothless. And that's not what the court nor Congress wanted in passing the Prison Litigation Reform Act. And so to the extent that Mr. Schwartz and Mr. Yagmin were compelled to follow the PLRA and the CFR regulations that applied to BOP responses, they failed to do that. And this court found that in 2012. It searched the record, the same record that is before all of you today. I've got one question I want to ask on a different topic, which is that with regard to the nationality claim, the district court concluded that it failed to state a claim as a matter of law because Schwartz does not allege sufficient facts to support his claim for discrimination based upon national origin. I certainly understand the Twombly and Iqbal standard about plausibility, but I don't know what's implausible about the claim that's been stated. What more facts does he need to state that he couldn't get his request for assignment to a prison camp considered because he wasn't a U.S. citizen? As I look at the record, there appears to be at least one document that suggests that's affirmatively true. SER 39, which is something from the regional director, which seems to reference the fact that he's not a citizen, is one of the explanations why he wasn't eligible for a prison camp. So what's implausible about the allegation? Why more facts have to be stated? It's implausible because it's incomplete. What Mr. Schwartz should have said is that he was a deportable alien. Of course, he's not going to describe himself that way, but it was his deportable alien status that made him required to be in a low security facility, not merely by fact that he was a Canadian citizen. And so the United States has an interest in having deportable aliens in a low security facility instead of, let's say, a camp, which is a minimum security facility with no walls because they're in the status where they're being considered for deportation as a deportable alien. Well, I'm not questioning the wisdom of the policy, but to dismiss the ground based on a pleading deficiency continues to puzzle me. His claim is there, and the fact that he's a non-citizen certainly played a big role. He couldn't be a deportable alien if he were a U.S. citizen. So why does that fail as a matter of pleading? If you look at the face of his complaint, he didn't provide any specificity or facts to support that claim. It's merely conclusory and... Well, his claim is that because I'm not a U.S. citizen, I wasn't considered, and that's true. Right. And Judge Clifton, to the extent that you don't want to accept the district court's decision on that, as you're well aware, this court can affirm on any ground, and the ground that it could affirm on is that deportable alien status is not a suspect classification and that as a deportable alien, he did not have an equal protection claim here, and that's McLean v. Crabtree, 173 F. 3rd, 1176. I see I'm over time. Thank you for the opportunity to address the court. We ask that for the foregoing reasons that this court affirm the dismissal of the district court of Mr. Yageman and Mr. Schwartz's claims. Thank you. Thank you. Thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Farris, Clifton, Bea